IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVE PIERRE,
    Petitioner

v.

DEPARTMENT OF HOMELAND
SECURITY, et al.
    Respondents

CIVIL NO. 1:12-CV-1869

(Judge Caldwell)

(Magistrate Judge Blewitt)

*M E M O R A N D U M*

I. *Introduction*

On September 18, 2012, petitioner, Dave Pierre, an ICE (Immigration and Customs Enforcement) detainee at the York County Prison, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, docketed at No. 12-CV-1869. On May 29, 2013, he filed another 2241 petition, docketed at No. 13-CV-1441. Both petitions challenge his continued detention while he contests his removal from the United States.[1] Petitioner is a citizen and native of Antigua and Barbuda. He entered the United States in 1972 and became a legal permanent resident, but was removed to Antigua in October 1993 after certain criminal offenses. He illegally entered the country again in 1994.

Petitioner has been in ICE custody since September 7, 2010, a period of about thirty-five months at the date of this writing. Petitioner believes that his detention is governed by 8 U.S.C. § 1226 and that under the standard applicable to such detention

---

[1] In an order issued on August 12, 2013, we consolidated No. 13-CV-1441 into No. 12-CV-1869, so we dispose of both case in No. 12-CV-1869.

the length of his detention is unreasonable. He requests release from custody or a lowering of the bail the immigration judge imposed as a condition of his release. In opposition, the government asserts that Petitioner's detention is governed by 8 U.S.C. § 1231 and that under the standard applicable to under section 1231, he is not entitled to release.

The magistrate judge has filed a report and recommendation. The magistrate judge agrees with the government that Petitioner's detention is governed by section 1231, that his current detention is proper under section 1231, but that ICE should nonetheless be required to give Petitioner another custody review hearing. Respondents have objected to the latter recommendation, arguing that since Petitioner is being properly detained, he is not entitled to another custody review hearing.

After review of the magistrate judge's report and the objections thereto, we agree with Respondents that Petitioner's current detention is constitutional and that no hearings are required at this time to satisfy Petitioner's due-process rights.

II. *Background*

The above petitions are not the first ones Petitioner filed contesting his detention. He previously filed two others: (1) *Pierre v. Sabol*, No. 10-CV-2634 (M.D. Pa.); and (2) *Pierre v. Sabol*, No. 11-CV-2184 (M.D. Pa.). We take some of this background from our May 11, 2012, memorandum in No. 11-CV-2184. *Pierre v. Sabol*, 2012 WL 1658293 (M.D. Pa.). We update it with evidentiary submissions made in No. 12-CV-1869.

As we wrote in our May 11, 2012, memorandum at *1-2: Petitioner first arrived in the United States in 1972 through St. Croix of the U.S. Virgin Islands. *Pierre v. Sabol*, No. 10-CV-2634 (M.D. Pa.)(Doc. 1, Pet., p. 2). On August 19, 1985, Petitioner was convicted in Municipal Court in Highland Park, New Jersey, of making a false statement, and he was ordered to pay a fine. (Doc. 9, Ex. 1, No. 10-2634). On July 17, 1991, Petitioner was convicted in the New Jersey Superior Court in Middlesex County of cocaine possession, and he was sentenced to three years of imprisonment. (*Id.*) As a result, Petitioner was placed in removal proceedings, (Doc. 9, Ex. 2, No. 10-CV-2634), and was removed to Antigua in October 1993 under an August 6, 1993, order of removal.

Petitioner admits that he illegally re-entered the United States in August 1994. (No. 11-CV-2184, Doc. 1, p. 3; No. 10-CV-2634, Doc. 1, p. 3). On June 25, 1996, Petitioner was convicted of the manufacture and distribution of a controlled substance in New Jersey Superior Court. (No. 10-CV-2634, Doc. 9, Ex. 1). He was sentenced to five years of imprisonment. (*Id.*) On December 20, 1996, Petitioner was again convicted of the manufacture and distribution of a controlled substance and sentenced to three years of imprisonment. (*Id.*) On June 22, 2004, Petitioner was convicted of hindering apprehension in the Municipal Court of New Brunswick, New Jersey, and ordered to pay a fine. (*Id.*; No. 11-CV-2184, Doc. 11, Exs. C & D).

On March 30, 2009, ICE officials issued Petitioner a Notice of Intent/Decision to Reinstate Prior Order. This document reinstated the August 6, 1993, removal order, when at the bottom of the notice Petitioner checkmarked a waiver of his

right to contest the reinstatement.  (No. 10-CV-2634, Doc. 9-1, Ex. 7, CM/ECF p. 17). The notice informed Petitioner that pursuant to 8 U.S.C. § 1231(a)(5), INA § 241(a)(5), he was "removable as an alien who has illegally reentered the United States after having been previously removed . . . while under an order of exclusion, deportation, or removal and are therefore subject to removal by reinstatement of the prior order."  (*Id.*)

On May 21, 2009, Petitioner was indicted in the United States District Court for the District of New Jersey for illegal re-entry into the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  (No. 10-CV-2634, Doc. 9, Ex. 8).  Petitioner pled guilty and was sentenced to eighteen months of imprisonment.  (No. 10-CV-2634, Doc. 9, Ex. 9). On June 25, 2010, ICE recommended that removal of Petitioner proceed pursuant to section 1231(a)(5), upon his release from his eighteen-month prison sentence.  (No. 10-CV-2634, Doc. 9, Ex. 10, CM/ECF p. 28).

On September 7, 2010, Petitioner was taken into ICE custody.  (No. 10-CV-2634, Doc. 9, Ex. 11 at ¶ 3; No. 11-CV-2184, Doc. 15, Ex. A).  On September 24, 2010, he requested relief from removal based on a claim that he feared persecution and torture in Antigua upon his return.  (No. 10-CV-2634, Doc. 9, Ex. 11 ¶ 4).  Petitioner was interviewed on October 1, 2010, by an asylum officer regarding his claim.  (No. 10-CV-2634, Doc. 9, Ex. 1).  The asylum officer concluded that Petitioner failed to establish his fear of persecution and torture in Antigua was reasonable.  (*Id.*)

On January 3, 2011, Petitioner appealed the asylum officer's determination to an Immigration Judge ("IJ"), and the asylum officer referred the decision to the IJ.  (No.

10-CV-2634 Doc. 9, Exs. 12 and 13). On January 10, 2011, the IJ vacated the decision of the asylum officer and put Petitioner in withholding proceedings. (No. 10-CV-2634, Doc. 9, Ex. 14).[2]

On May 31, 2011, the IJ issued an order in Petitioner's immigration case denying Petitioner's request for withholding of removal under the Convention Against Torture ("CAT"). The IJ thought that Petitioner had no right to appeal this decision. (No. 10-CV-2634, Doc. 16-1, CM/ECF p. 11). On Petitioner's appeal, on August 30, 2011, the Board of Immigration Appeals (BIA) reversed the IJ's May 31, 2011, order. The BIA stated that the IJ was wrong in believing that there could be no appeal from his order. The IJ had placed Petitioner in "withholding only" proceedings under 8 C.F.R. § 208.31(g)(2), and a ruling in those proceedings was appealable. (No. 11-CV-2184, Doc. 1, CM/ECF p. 11). The BIA remanded Petitioner's case so that the IJ could set forth his factual findings and analysis, which would allow the BIA to conduct proper appellate review. The BIA also allowed the parties to present additional evidence. (*Id.*, CM/ECF pp. 11-12).

The submissions in No. 12-CV-1869 provide the rest of the background. On remand, the IJ held a hearing on May 10, 2012, and again ordered Petitioner removed to Antigua. (No. 12-CV-1869, Doc. 10-1, ECF p. 35). On September 12, 2012, the BIA upheld the IJ's order. (*Id.*, ECF p. 40). Petitioner appealed the BIA's decision to

---

[2] The IJ did so even though he did not believe Petitioner had a valid claim for withholding. The IJ thought this would give Petitioner time to prove another claim, that he had derivative citizenship from his mother, even though this was not a reason for continuing the removal proceedings. (No. 10-CV-2634, Doc. 16-1, CM/ECF p. 10).

the Third Circuit and sought a stay of removal. (*Id.*, ECF p. 45). The Third Circuit denied the stay. (*Id.*). On June 5, 2013, the Third Circuit affirmed the BIA. *Pierre v. Attorney General*, ___ F. App'x ___, 2013 WL 2420870 (3d Cir. 2013)(nonprecedential).

During the course of his detention Petitioner had a number of custody reviews. 2012 WL 1658293, at *3. On his 2241 petition in No. 11-CV-2184, we concluded that he was being detained under section 1226 and ordered that he be given a hearing before an IJ where the government would have the burden of proving he was a flight risk or a danger to the community if it wished to continue to detain him. *Id.* at *5. On May 17, 2012, the IJ held a hearing and concluded Petitioner was a flight risk. He imposed bail in the amount of $100,000. (No. 12-CV-1869, Doc. 1, ECF p. 2). This decision was upheld on appeal to the BIA. (No. 12-CV-1869, Doc. 10-1, ECF p. 47).[3]

On March 12, 2013, the ICE field office conducted a custody review in which Petitioner was advised: "ICE is currently working to effect your removal from the United States and a travel document request remains to be (sic) pending with the Consulate of Antigua and Barbuda. You are to remain in ICE custody pending your removal from the United States." He was also advised that a decision on his custody was being transferred to the Headquarters Post Order Unit (HQPOCRU). (Doc. 16, ECF p. 3).

---

[3] By way of a motion under Fed. R. Civ. P. 60(b), Petitioner sought our review of the IJ's decision, but we declined, in part because Petitioner had to exhaust his administrative remedies before the BIA. *Pierre v. Sabol*, No. 11-CV-2184, 2012 WL 2921794, at *1 (M.D. Pa. July 17, 2012).

On April 1, 2013, HQPOCRU advised Petitioner: "ICE is currently working with the government of Antigua-Barbuda to secure a travel document for your removal from the United States. Your removal to Antigua-Barbuda is expected to occur in the reasonably foreseeable future once the litigation is complete; therefore you are to remain in ICE custody at this time." (Doc. 17, ECF p. 2).

On June 26, 2013, HQPOCRU advised Petitioner: "A request for a travel document was submitted on your behalf to the government of Antigua & Barbuda. The government of Antigua & Barbuda has not denied issuing you a travel document and the request is still pending. Your removal to Antigua & Barbuda is expected to occur in the reasonably foreseeable future; therefore you are to remain in ICE custody at this time." (Doc. 20-2, ECF p. 1).

Petitioner asserts that his removal to Antigua and Barbuda will not occur in the reasonably foreseeable future because he has been told by personnel at that country's consulate that they will need more than a birth certificate, which was apparently sufficient when he was removed in 1993. They will also need a passport, his last address, and "more information." Petitioner asserts he does not have the additional "information," which he does not describe. (Doc. 21, ECF p. 5; Doc. 23, ECF p. 6). In other filings, Petitioner represents that personnel at the Antiguan consulate have told ICE personnel that they will not issue a travel document for Petitioner. (Doc. 16, ECF p.1; Doc. 17, ECF p.1).

III. *Discussion*

We first deal with Respondents' argument that we lack jurisdiction over No. 12-CV-1869 because Petitioner did not name his immediate custodian as the respondent, *see Rumsfeld v. Padilla,* 542 U.S. 426, 434-35, 124 S.Ct. 2711, 2717-18, 159 L.Ed.2d 513 (2004), and because at the time he filed that petition he was being detained in Elizabeth, New Jersey. We think this issue has been cured by the consolidation of No. 12-CV-1869 with No. 13-CV-1441. No. 13-CV-1441 was filed against the warden of the Pike County jail while Petitioner was detained there. The warden is within the jurisdiction of the Middle District. We will therefore adjudicate Petitioner's habeas claim on the merits.

Petitioner argues he is being detained under section 1226 and that his detention should be evaluated under *Diop v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011). As noted, Respondents argue that he is detained under section 1231 and that the propriety of his detention should be examined under *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). We agree with Respondents.

ICE can detain an alien under two different statutory sections, section 1226 or section 1231. *Leslie v. Attorney General*, 678 F.3d 265, 268-69 (3d Cir. 2012). "Because detention under the two statutes is governed by different standards, we must determine which statute . . . provide[s] the authority for [Pierre's] detention at a given time." *Id.* at 270.

-8-

Section 1226 governs detention while removal proceedings are ongoing. Section 1226(a) provides for discretionary detention. The "alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." § 1226(a). ICE may also release him on bond. § 1226(a)(1) and (2). Section 1226(c) provides for mandatory detention for aliens who have committed aggravated felonies.

Section 1231 governs detention after removal has become certain. *Leslie*, 678 F.3d at 270 ("the purpose of § 1231 detention is to secure an alien pending the alien's certain removal"). Specifically, section 1231 governs detention after the start of the "removal period," defined in the section as potentially starting on three different dates, but for our purposes starting on the "date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i).

Based on the foregoing, Petitioner's detention is governed by section 1231, not section 1226(a). The IJ issued an order of removal on May 10, 2012, and that order was upheld on appeal to the BIA on September 12, 2012. The removal period began on the latter date, as that was the date the order of removal became administratively final. *See Llorente v. Holder*, No. 11-6940, 2012 WL 1191147, at *5 (D.N.J. April 10, 2012).[4]

---

[4] If the Third Circuit had granted a stay of removal, the removal period would not have started until June 5, 2013, the date the Third Circuit affirmed the BIA's decision to allow the removal order to stand. Section 1231(a)(1)(B)(ii) begins the removal period on the date the court of appeals issues its final order on review of the BIA's order and if the court had issued a stay of removal. *See Leslie*, 678 F.3d at 270 (under section 1231(a)(1)(B)(ii), "there can be little doubt that an alien, subject to and within a stay of removal, cannot yet be in the "removal period" for § 1231 purposes").

Since Petitioner is in the removal period his detention is governed by section 1231. The propriety of his continued detention is thus examined under *Zadvydas*, which dealt with the due-process implications of indefinite confinement under section 1231. 533 U.S. at 690, 121 S.Ct. at 2498.

Pursuant to section 1231(a), the Attorney General has ninety days to remove an alien from the United States after an order of removal becomes final. During this removal period, detention of the alien is mandatory. *See* 8 U.S.C. § 1231(a)(2).

After the ninety-day period, if the alien has not been removed and remains in the United States, his detention may be continued, or he may be released under the supervision of the Attorney General. *See* 8 U.S.C. §§ 1231(a)(3) and (6). Under section 1231(a), ICE may detain an alien for a "reasonable time" necessary to effectuate the alien's deportation, but under *Zadvydas* indefinite detention is not authorized. In *Zadvydas*, the Supreme Court defined six months as a presumptively reasonable period of detention. 533 U.S. at 701, 121 S.Ct. at 2505. After this six-month period, an alien must be released if he provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. If he makes this showing, ICE must rebut it with evidence and show that there is indeed a significant likelihood of removal in the reasonably foreseeable future if ICE is to keep him in custody. *Id.*, 121 S.Ct. at 2505.

We conclude that Petitioner's detention is lawful. As noted, his removal period began on September 12, 2012. His current period of confinement is thus only

-10-

about five months beyond the presumptive six-month period of reasonable confinement. This eleven-month period is still a reasonable period of confinement. *Faustov v. Napolitano*, No. 13-CV-1018, 2013 WL 3474766, at *5 (M.D. Pa. July 10, 2013)(collecting cases). *See also Zadvydas,* 533 U.S. at 701, 121 S.Ct. at 2505 ("This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.").

Additionally, Petitioner has failed to meet his burden of showing that his removal will not occur in the reasonably foreseeable future. He asserts in two filings that personnel at the Antiguan consulate have told ICE personnel that they will not issue a travel document for him. He provides no affidavit or penalty-of-perjury declaration to that effect, or any other evidence to support it. Additionally, he contradicts this assertion when he elsewhere describes his own conversation with consulate personnel. In that conversation, the personnel do not advise him they will not issue a travel document. Instead, they tell him what is required, a passport, an address, and "more information" which Petitioner does not have. But Petitioner does not specify what that information is and why he cannot obtain it. He has thus not met his burden.

Of course, "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas,* 533 U.S. at 701, 121 S.Ct. at 2505. Thus,

-11-

if time passes with no progress on removal, Pierre may file a new 2241 petition challenging his continued detention, especially if specific events occur indicating he will not be removed in the reasonably foreseeable future.

We will issue an appropriate order.[5]

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

August 13, 2013

---

[5] We recognize that Petitioner has been in detention for about thirty-five months, most of that under section 1226, but any habeas claim concerning detention governed by section 1226 was mooted when detention was switched to section 1231. *See Ufele v. Holder*, 473 F. App'x 144, 146 (3d Cir. 2012)(nonprecedential)(challenge to two-year detention under section 1226 was mooted when the petitioner's detention was switched to section 1231).

-12-

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVE PIERRE,
    Petitioner

    v.

DEPARTMENT OF HOMELAND
SECURITY, et al.
    Respondents

CIVIL NO. 1:12-CV-1869

(Judge Caldwell)

(Magistrate Judge Blewitt)

*O R D E R*

AND NOW, this 13th day of August, 2013, upon consideration of the report (Doc. 18) of the magistrate judge, it is ordered that:

    1. The petition (Doc. 1) for a writ of habeas corpus is DENIED.

    2. The Clerk of Court shall close this file.

                             /s/ William W. Caldwell
                               William W. Caldwell
                               United States District Judge